UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| BONHOMME INVESTMENT PARTNERS, LLC, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 4:13CV475 CDP |
| SHAUN HAYES, et al., | ) ) ) | |
| Defendants. | ) | |

## <u>MEMORANDUM AND ORDER</u>

Plaintiffs Bonhomme Investment Partners, LLC, Donald M. Davis, and Richard C. Lehman brought this action for securities fraud against Shaun Hayes, Richard J. Miller, Truman Bancorp, Inc., and the Federal Deposit Insurance Corporation as receiver for Truman Bank.  Plaintiffs allege that defendants Hayes and Miller made various misrepresentations to plaintiffs in securing a loan from Bonhomme to Truman Bancorp. The FDIC has moved to dismiss all claims against it, arguing that all claims are barred by 12 U.S.C. § 1823(e) and 12 U.S.C. § 1821(d)(9)(A).  Because no specific asset of the FDIC's would be diminished by the claims, I find that the statutes do not apply and I will deny the motion.

## **Background**

Defendants Hayes and Miller were associated with both Truman Bancorp (Bancorp) and Truman Bank (Truman).  Plaintiffs Davis and Lehman are the only members of Bonhomme Investment Partners.  In early 2009, Hayes and Miller went to Bonhomme seeking a $6,000,000 loan.  The loan was to be made to Bancorp, for the benefit of Truman Bank.  A promissory note was executed on June 19, 2009 for the loan, which Bancorp secured with its Truman stock and FFC Financial Corporation stock.

At the time of the loan, Hayes represented to Bonhomme that Sun Security Bank, with which Hayes was also affiliated, would lend Bonhomme the $6,000,000 to fund the Truman loan.  Hayes would further arrange for Bonhomme to use the collateral provided by to it by Bancorp to secure Bonhomme's loan from Sun Security.  Accordingly, Bonhomme borrowed $6,025,100 from Sun Security and pledged the Bancorp Note and collateral to Sun Security.

However, at the time of the initial loans, Bancorp was not entitled to pledge the Truman stock or FFC stock to Bonhomme because that stock had already been pledged to secure other Bancorp obligations.  Defendants failed to disclose this fact to plaintiffs. Plaintiffs allege that in early 2010, Hayes and Miller falsely told plaintiffs that they had been informed by the FDIC and the Federal Reserve that Bancorp could not pledge its Truman stock to secure the Bancorp Note because Bonhomme could not legally own that

stock in the event of default by Bancorp.  Hayes and Miller allegedly used this misrepresentation as a pretext to get Bonhomme to agree to exchange the Bancorp Note for two Contingent Convertible Debentures from Bancorp.  Hayes arranged for Sun Security to consent to this exchange, and Bonhomme then pledged one of the Debentures to Sun Security to secure its own loan.  Bonhomme, Davis, and Lehman agreed to a modification and extension of the Sun Security loan in reliance on the representations from defendants.

On September 14, 2012, Truman Bank was closed by the Missouri Division of Finance, and the FDIC was appointed as Truman Bank's receiver.  The FDIC then sold Truman Bank in its entirety to Simmons First National Bank.

Plaintiffs brought this action seeking to recover damages on claims for federal securities fraud, Missouri securities fraud, breach of implied covenant of good faith and fair dealing, common law fraud, negligent misrepresentation, and unjust enrichment. They sued the FDIC in its position as receiver for Truman Bank, based on the misrepresentations made by Hayes and Miller in connection with Bonhomme's loan to Bancorp.

## Discussion

A defendant may move to dismiss a claim "for failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6).  The purpose of a

motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. When considering a 12(b)(6) motion, the court considers the factual allegations of a complaint as true and construes those allegations in favor of the plaintiff.  *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).  To avoid dismissal for failure to state a claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Although "specific facts are not necessary," the plaintiff must allege facts sufficient to "give fair notice of what the . . . claim is and the grounds upon which it rests."  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions. *Twombly*, 550 U.S. at 545.

The FDIC argues that all of plaintiffs' claims against it are barred by 12 U.S.C. § 1823(e) and 12 U.S.C. § 1821(d)(9)(A).  These sections are part of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA).  Section 1823(e) provides, in part:

> No agreement which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as a receiver of any insured depository institution, shall be valid against the [FDIC] unless such agreement—
>
> (A) is in writing,

(B) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

(C) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

(D) has been, continuously, from time of its execution, an official record of the depository institution.

12 U.S.C. § 1823(e)(1).  This was a codification of the doctrine espoused in *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447 (1942), in which the Supreme Court held that a secret agreement could not be a defense to a suit brought by the FDIC because it would tend to deceive the banking authorities.  The statute serves the dual purposes of "allow[ing] federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets," *Hanson v. FDIC*, 13 F.3d 1247, 1251 (8th Cir. 1994) (quoting *Langley v. FDIC*, 484 U.S. 86, 91 (1987)), and preventing fraudulent insertion of new terms in loan transactions when a bank appears headed for failure.  *Langley*, 484 U.S. at 92.

The FDIC argues that each of plaintiffs' counts arises out of false representations made by Truman in the course of two agreements—the initial Truman/pledge of stock, and the substitution of the debentures as collateral for the Truman loan—that were not memorialized in writing or otherwise compliant with the requirements of § 1823(e).  But

- 5 -

I conclude that because the claims at issue, if successful, would only allow plaintiffs to be treated like any other creditor of the bank and would not diminish a specific asset acquired by the FDIC, § 1823(e) is not triggered and therefore failure to meet the requirements of § 1823(e) does not bar the claims.

In most cases considering § 1823(e), the FDIC is the receiver suing an insolvent bank's debtor to collect on a note or other obligation, and the debtor argues that some unwritten agreement between it and the defunct bank is a defense to the FDIC's action. *See, e.g.*, *Langley*, 484 U.S. 86. The asset at issue, then, is the note held by the FDIC, the value of which would be diminished by whatever unwritten agreement is alleged by the debtor. *Id.* at 93-94. The present case is somewhat atypical in that the FDIC, as receiver for Truman, is the debtor in the agreements at issue, not the creditor.

While many courts have excluded claims where the FDIC is the debtor, the Eighth Circuit has taken a broader—and minority—position in holding that § 1823(e) applies in cases where the FDIC is a debtor just as in cases where it is a creditor. *N. Ark. Med. Ctr. v. Barrett*, 962 F.2d 780, 787-89 (8th Cir. 1992). In *North Arkansas*, a medical center placed money on deposit with a bank (for which the FDIC was later appointed as receiver) in the form of a jumbo certificate of deposit. *Id.* at 782. The bank pledged collateral to the medical center to cover the amount of the center's deposits in excess of the federal insurance. *Id.* After the bank failed, the medical center brought suit seeking a

declaration that it had a perfected security interest in the certificate on a theory of breach of contract, and the Eighth Circuit held that § 1823(e) barred the claim because it would diminish the FDIC's interest in the certificate. *Id.* at 783. In doing so, the Eighth Circuit made potentially broad-reaching statements regarding the applicability of § 1823(e). *See, e.g.*, *id.* at 789 ("It would be as intolerable for the FDIC to be deceived about the value of a certain asset as to be deceived about the net worth of the bank").

While *North Arkansas* allows for claims like the ones now before me—with the FDIC as debtor—to potentially fall within the purview of §1823(e), that case does not do away with the requirement that a specific asset be diminished. Other courts interpreting *North Arkansas* have generally agreed. *See, e.g.*, *Cote d'Azur Homeowners Ass'n v. Venture Corp.*, 846 F. Supp. 827, 839 (N.D. Cal. 1994) ("Whether or not *North Arkansas* is correct in disregarding the distinction between debtors and creditors in applying § 1823(e), the holding does not imply that the agreement barred by § 1823(e) need not diminish or defeat the [FDIC]'s interest in a particular asset").

The proposition that § 1823(e) requires that the FDIC's interest in a particular asset be diminished is most strongly supported by the plain language of the statute, which states: "No agreement which tends to diminish or defeat the interest of the [FDIC] *in any asset* acquired by it . . ." (emphasis added). Further, § 1823(e)(1)(B) states that the agreement must have been made "contemporaneously with the acquisition *of the asset*."

(emphasis added).  The singular use of the word "asset" and the contemporaneous execution requirement "would make little sense if the statute's reference to an 'asset' did not require a specific, identifiable asset but could instead be satisfied by diminution of the bank's assets generally." *Sung v. Mission Valley Renewable Energy*, No. CV11-5163-RMP, 2013 WL 943536, at \*4 (E.D. Wash. Mar. 11, 2013).  Additionally, as identified in *Sung*, multiple other federal courts examining this issue have found a "particular asset" requirement.  *Id.*  (citing *Murphy v. FDIC,* 61 F.3d 34, 37–38 (D.C. Cir. 1995); *John v. Resolution Trust Corp.*, 39 F.3d 773, 776 (7th Cir. 1994); *FDIC v. Bracero & Rivera, Inc.*, 895 F.2d 824, 830 (1st Cir. 1990); *Commerce Fed. Sav. Bank v. FDIC*, 872 F.2d 1240, 1242–43, 1246 (6th Cir. 1989); *Grubb v. FDIC*, 868 F.2d 1151, 1158–59 (10th Cir. 1989); *Avirez, Ltd. v. Resolution Trust Corp.*, 876 F. Supp. 1135, 1142 (C.D. Cal. 1995); *Agri Exp. Co-op. v. Universal Sav. Ass'n*, 767 F. Supp. 824, 833 (S.D. Tex. 1991)).  Given the plain language of the statute, the general consensus of the case law, and the fact that this conclusion is consistent with the facts at issue in *North Arkansas*, I agree with these other courts and conclude that a specific or particular asset of the FDIC must be diminished by the agreement at issue for § 1823(e) to apply.

In its reply memorandum, the FDIC makes two arguments regarding the specific asset requirement.  First, it argues that regardless of the § 1823(e) requirements, §

1821(d)(9)(A) also bars plaintiffs' claims and does not require a specific asset be at issue.

Section 1821(d)(9)(A) provides:

> Except as provided in subparagraph (B), any agreement which does not meet the requirements set forth in section 1823(e) of this title shall not form the basis of, or substantially comprise, a claim against the receiver or the [FDIC].

This section extended the protection of § 1823(e) to affirmative claims against the FDIC.

*N. Ark.*, 962 F.2d at 787; *John v. Resolution Trust Corp.*, 39 F.3d 773, 775 (7th Cir.

1994).

The FDIC bases its entire argument that § 1821(d)(9)(A) does not require a

specific asset be diminished on an FDIC Statement of Policy.  The Statement reads, in

relevant part:

> Sections 1823(e) . . . and 1821(d)(9)(A) should be interpreted in a manner consistent with the policy concerns underlying the *D'Oench* doctrine. Accordingly, subject to the Guidelines, these sections bar claims that do not meet the enumerated recording requirements set forth in section 1823(e), regardless of whether a specific asset is involved, to the same extent as such claims would be barred by the *D'Oench* doctrine.
> . . .
> More specifically, the statutory definition of the scope of agreements to which section 1823(e) applies—*i.e.*, those agreements "which tend[] to diminish or defeat the interest of the [FDIC] in any asset acquired by it" (section 1823(e))—is *not* a "requirement" that section 1823(e) imposes on those agreements, which if not "met" renders section 1821(d)(9) inapplicable.

Statement of Policy Regarding Fed. Common Law and Statutory Provisions Protecting

FDIC, as Receiver for Corporate Liquidator, Against Unrecorded Agreements or

Arrangements of a Depository Inst. Prior to Receivership, 62 Fed. Reg. 5984, 5984 (1997).

The Eighth Circuit has held that the FIRREA preempted *D'Oench*.  *See Kessler v. Nat'l Enters., Inc.*, 165 F.3d 596, 598 (8th Cir. 1999).  While the FIRREA is a partial codification of the *D'Oench* doctrine, the statute is more restrictive than *D'Oench* in that it applies only to cases involving a specific asset.  *Young v. FDIC*, 103 F.3d 1180, 1188-89 (4th Cir. 1997); *E.I. du Pont de Nemours and Co. v. FDIC*, 32 F.3d 592, 597 (D.C. Cir. 1994).  At least one other Circuit has explicitly interpreted § 1821(d)(9)(A) as incorporating by reference the requirements of § 1823(e) *including* the asset requirement. *See Murphy v. FDIC*, 61 F.3d 34, 38 (D.C. Cir. 1995).  The FDIC's Statement of Policy reasons that section 1821(d)(9) should be interpreted otherwise—to *not* contain an asset requirement—so as to be "consistent with the policy concerns underlying the *D'Oench* doctrine."  But Congress enacted the statute, with its more restrictive language, after the *D'Oench* doctrine had been established for decades.  The FDIC's interpretation—re-broadening a scheme that Congress had purposefully narrowed—therefore carries little weight.[1]  The plain language of § 1821(d)(9)(A) incorporates the requirements of § 1823(e) in their entirety.

---

[1] The FDIC argues that it is entitled to "considerable deference," and possibly even *Chevron* deference, in its interpretation of §§ 1823(e) and 1821(d)(9)(a).  It raises this argument only in a footnote in its reply brief, and offers no other support except for cites to two other cases, neither directly on point.  I find that the FDIC is not entitled to particular deference on this matter.

Second, the FDIC argues that even if both sections require a specific asset, such an asset is present here in either the form of the $6 million Truman loan or the $6,025,100 loan made by Sun Security Bank and secured by the Bancorp Note.  Regarding the Truman loan, the FDIC argues that the $6 million of capital acquired by the FDIC as receiver for Truman constitutes the specific asset which would be diminished by this action.  This position is untenable.  Although there was a specific amount of capital transferred—$6 million—that money simply became part of Truman's general assets. Claims that diminish the value of the overall bank are not sufficient to meet the "asset" requirement.  *See Murphy*, 61 F.3d at 37.  *North Arkansas* is again instructive.  Although holding that a secret agreement which affected priorities among creditors could trigger § 1823(e), the Eighth Circuit explained, "The result of permitting a hidden encumbrance would be that the parties to the purchase and assumption may wind up with *an asset* that is less valuable than it seemed."  962 F.2d at 789.  (emphasis added).  As stated above, the asset in *North Arkansas* was a bond owned by the bank, not a general diminishment of the bank's value.  *Id.*

Alternatively, the FDIC argues that the Sun Security loan to Bonhomme, secured by the Bancorp Note, is a "specific asset" acquired by the FDIC in its role as receiver for Sun Security.  This is a confusing argument—confusion the FDIC seems to invite— because the FDIC is acting as receiver for both Truman and Sun Security Banks.

However, in the present action, the FDIC has only been sued in its capacity as receiver for Truman.  The assets held by the FDIC as receiver for Sun Security are not at risk in this case.

Furthermore, while the underlying value of the FDIC's interest in the Sun Security loan may or may not be diminished by these claims, the FDIC's security interest in that loan will not be affected.  Accordingly, the Sun Security loan cannot be the specific asset in *this* case.  *See Kessler*, 165 F.3d at 599.  *Kessler* held that "It is not realistic to apply the bar of § 1823(e) to non-banking transactions or other types of agreements which would not customarily be 'scrutinized, approved, and recorded by the bank's executive committee or board," and "the many agreements between the borrower and third parties that might affect the value of the underlying collateral are not subjected to this formal process."  *Id.*  From the FDIC's perspective as receiver for Sun Security (which is how I must view the issues in regard to the Sun Security loan), the claims in this case involve just these kinds of agreements "between the borrower and third parties."

Both § 1823(e) and § 1821(d)(9)(A) require that an agreement diminish a specific asset acquired by the FDIC in its role as receiver for a bank.  Neither the $6 million loan from Bonhomme to Bancorp nor the loan from Sun Security to Bonhomme constitutes a specific asset the FDIC acquired as receiver of Truman Bank, as required by the statute.  Therefore the FDIC cannot rely on the statute as a bar to plaintiffs' claims.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion to dismiss [#26] is denied.


_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 4th day of September, 2013.