UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

|  |  |  |
|---|---|---|
| BONHOMME INVESTMENT PARTNERS, LLC, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 4:13-cv-475 |
| SHAUN HAYES, *et al.*, | ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) ) | |

<u>SECOND AMENDED COMPLAINT</u>

COME NOW Plaintiffs, Bonhomme Investment Partners, LLC

("Bonhomme"); Donald M. Davis ("D. Davis"); and Richard C. Lehman ("Lehman"),

by and through their undersigned attorneys, and for their Second Amended

Complaint against Defendants, Shaun Hayes ("Hayes"); Federal Deposit Insurance

Corporation, as Receiver for Truman Bank ("FDIC-R"); Truman Bancorp, Inc.

("Bancorp"); Richard Miller, through the Personal Representative of his estate

("Miller"); Kenneth Kraus ("Kraus"); Raymond Saleeby ("Saleeby"); Marvin Cherry

("Cherry"); Irvin Davis ("I. Davis"); Sherwyn Wayne ("Wayne"); Robert Minkler, Sr.

("Minkler"); Carmelo Natoli ("Natoli"); and Daniel Slavin ("Slavin"), state as follows:

## JURISDICTION AND VENUE ALLEGATIONS

1.     Plaintiff Bonhomme is a Missouri limited liability company organized under the laws of the State of Missouri, with its principal place of business in St. Louis County, Missouri.

2.     Plaintiff D. Davis is an individual residing in St. Louis County, Missouri.

3.     Plaintiff Lehman is an individual residing in St. Louis County, Missouri.

4.     Plaintiffs D. Davis and Lehman are the only members of Bonhomme.

5.     Defendant Hayes is an individual residing at 9 Fordyce Lane, St. Louis, MO  63124, within St. Louis County.

6.     Defendant FDIC-R is a federal government agency which acted as Receiver for Truman Bank, a failed Missouri bank that went into receivership on or about September 14, 2012. Truman Bank's principal place of business was in St. Louis County, Missouri.

7.     Defendant Bancorp is a Missouri corporation with its principal place of business in St. Louis County, Missouri. Bancorp was at all relevant times the parent holding company of Truman Bank.  On or about July 21, 2014 this Court entered Judgment in favor of Plaintiffs and against Bancorp.

8.     Defendant Miller was an individual who at all relevant times resided in St. Louis County, Missouri. Upon information and belief, Miller died in or about December 2012.  Upon further information and belief, on or about April 11, 2013,

2

Albert S. Rose, Jr. was named personal representative of the Estate of Richard Miller, Case No. 13SL-PR00077-02 in the Circuit Court of St. Louis County, Missouri, Probate Division.

9.     Upon information and belief, Defendant Kraus is an individual residing in St. Louis County, Missouri.

10.     Upon information and belief, Defendant Saleeby is an individual residing in St. Louis County, Missouri.

11.     Upon information and belief, Defendant Cherry is an individual residing in St. Louis County, Missouri.

12.     Upon information and belief, Defendant I. Davis is an individual residing in St. Louis County, Missouri.

13.     Upon information and belief, Defendant Wayne is an individual residing in St. Louis County, Missouri.

14.     Upon information and belief, Defendant Minkler is an individual residing in St. Louis County, Missouri.

15.     Upon information and belief, Defendant Natoli is an individual residing in St. Louis County, Missouri.

16.     Upon information and belief, Defendant Slavin is an individual residing in St. Louis County, Missouri.

17.     Upon information and belief, Defendant Hayes was, at all relevant times, a shareholder of Defendant Bancorp and a consultant to Truman Bank and acted on behalf of and as agent for each of those entities.

18.    Upon information and belief, Defendant Miller was, at all relevant times, Chief Executive Officer and a director of both Truman Bank and Bancorp, was a shareholder of Bancorp and acted on behalf of and as agent for each of those entities.

19.    Upon information and belief, Defendant Kraus was, at all relevant times, President and a director of both Truman Bank and Bancorp, and acted on behalf of and as agent for each of those entities.

20.    Upon information and belief, Defendant Saleeby was, at all relevant times, a director of both Truman Bank and Bancorp, and acted on behalf of and as agent for each of those entities.

21.    Upon information and belief, Defendant Cherry was, at all relevant times, a director of both Truman Bank and Bancorp, and acted on behalf of and as agent for each of those entities.

22.    Upon information and belief, Defendant I. Davis was, at all relevant times, a director of both Truman Bank and Bancorp, and acted on behalf of and as agent for each of those entities.

23.    Upon information and belief, Defendant Wayne was, at all relevant times, a director of both Truman Bank and Bancorp, and acted on behalf of and as agent for each of those entities.

24.    Upon information and belief, Defendant Minkler was, at all relevant times, a director of both Truman Bank and Bancorp, and acted on behalf of and as agent for each of those entities.

25.     Upon information and belief, Defendant Natoli was, at all relevant times, a director of both Truman Bank and Bancorp, and acted on behalf of and as agent for each of those entities.

26.     Upon information and belief, Defendant Slavin was, at all relevant times, a director of both Truman Bank and Bancorp, and acted on behalf of and as agent for each of those entities.

27.     This Court has subject matter jurisdiction over this action under 12 U.S.C. §1821(d)(6) and 28 U.S.C. §§1331 and 1367.

28.     This Court has personal jurisdiction over all Defendants because each of them: (a) is domiciled in this district, (b) engaged in the conduct at issue in this district, (c) has consented in relevant agreements to be sued within this district, (d) continuously and systematically conducts business in this district, and/or (e) is registered to do business and has an agent appointed for service of process in this district.

29.     Venue is proper in this district under 28 U.S.C. §1391(b) and (c).

## GENERAL ALLEGATIONS

30.     In early 2009, Hayes and Miller approached Bonhomme, through D. Davis and Lehman, about entering into a transaction that would provide capital to Truman Bank through a loan from Bonhomme to Truman Bank's parent holding company, Defendant Bancorp. Under the plan proposed by Hayes and Miller, Bonhomme would loan $6,000,000 to Bancorp, for Truman Bank's benefit, and Bancorp would then pledge to Bonhomme all of its Truman Bank stock ("Truman

Stock") and all of its shares of the stock of FFC Financial Corporation ("FFC Stock") to secure the loan.

31.     As a result of these discussions, on or about June 19, 2009, Bonhomme agreed to loan $6,000,000 to Bancorp, and Bancorp executed a promissory note in Bonhomme's favor in that amount (the "Bancorp Note"). A true and correct copy of the Bancorp Note is attached hereto as Exhibit 1.

32.     To secure the Bancorp Note, Bancorp pledged its Truman Stock and FFC Stock, as agreed, and signed security agreements reflecting that pledge (the "Security Agreements"). True and correct copies of the Security Agreements are attached hereto as Exhibits 2 and 3.

33.     In consideration for Bancorp's execution of the Bancorp Note and the execution of related security agreements, Bonhomme advanced $6,000,000 to Bancorp, for Truman's benefit. (The loan by Bonhomme to Bancorp and all related transactions are hereinafter referred to collectively as the "Truman Loan.")

34.     At the time of the Truman Loan, Hayes represented to Bonhomme, D. Davis, and Lehman that Sun Security Bank ("Sun"), where Hayes was an officer, director, and principal shareholder, would loan Bonhomme the $6,000,000 needed to fund the Truman Loan. Hayes stated to them that he would arrange for Bonhomme to use the collateral provided by Bancorp on the Truman Loan (*i.e.,* the Truman Stock and the FFC Stock) to secure Bonhomme's loan from Sun.

35.     Based on these statements, and at Hayes'urging, Bonhomme borrowed $6,025,100 from Sun (the "Sun Loan") to finance the Truman Loan, and pledged the

6

Bancorp Note and the collateral provided by Bancorp on the Truman Loan as collateral for the Sun Loan.

36.   D. Davis and Lehman personally guaranteed the Sun Loan. Lehman also pledged a securities account he held with his wife.

37.   At the time of the Truman Loan and the Sun Loan, Bancorp was not entitled to pledge the Truman Stock or the FFC Stock as collateral for the Truman Loan because that stock had already been encumbered to secure other Bancorp obligations.  Those prior-in-time Bancorp obligations included, without limitation, a certain $7,217,000 Truman Statutory Trust I securities placement which closed on or about September 17, 2003 ("Trust Preferred I") and a certain $5,000,000 Truman Statutory Trust III securities placement which closed on or about September 27, 2007 ("Trust Preferred III").

38.   Upon information and belief, at the time of the Truman Loan and the Sun Loan, Truman Bank, Bancorp, Hayes, Miller, Kraus, Saleeby, Cherry, I. Davis, Wayne, Minkler, Natoli and Slavin knew, or should have known, that Bancorp could not pledge the Truman Stock or the FFC Stock as collateral for the Truman Loan because that stock had already been encumbered to secure other Bancorp obligations, including without limitation Trust Preferred I and Trust Preferred III.

39.   At the time of the Truman Loan and the Sun Loan, each of the above-named Defendants failed to disclose to Bonhomme, D. Davis and Lehman, and Bonhomme, D. Davis, and Lehman did not know, that Bancorp could not pledge the

Truman Stock or the FFC Stock as collateral for the Truman Loan because that stock had already been encumbered to secure other Bancorp obligations.

40.    In early 2010, Hayes and Miller told Bonhomme, D. Davis, and Lehman that theyhad been informed by the FDIC and the Federal Reserve that Bancorp could not pledge its Truman Stock to secure the Bancorp Note because Bonhomme could not legally own that stock in the event of default by Bancorp. Hayes and Miller stated that, for that reason, Bonhomme would need to exchange the Bancorp Note for convertible debentures.

41.    Upon information and belief, at the time Hayes and Miller made this statement, it was false, and Hayes and Miller knew it was false.

42.    Truman Bank, Bancorp, Hayes, Miller, Kraus, Saleeby, Cherry, I. Davis, Wayne, Minkler and Slavin also again failed at this time to disclose to Bonhomme, or to D. Davis and Lehman, that Bancorp was not entitled to pledge the Truman Stock or the FFC Stock as collateral for the Truman Loan because that stock had already been encumbered to secure other Bancorp obligations.

43.    Each of these Defendants intended that Bonhomme rely on these false representations and omissions in agreeing to exchange the Bancorp Note for the convertible debentures.

44.    In reliance on these false representations and omissions, Bonhomme agreed to exchange the Bancorp Note for two Contingent Convertible Debentures from Bancorp dated April 20, 2010, one in the amount of $4,800,000 and one in the

amount of $1,200,000 (collectively, the "Debentures"). True and correct copies of the Debentures are attached hereto as Exhibits 4 and 5, respectively.

45.     In order to exchange the Bancorp Note for the Debentures, it was necessary for Bonhomme to obtain Sun's consent to switch the Debentures for the Bancorp Note as collateral for the Sun Loan.

46.     Hayes arranged for Sun to give that consent.

47.     In reliance on the above-named Defendants' misrepresentations and omissions, Bonhomme agreed to the proposed exchange, and Bonhomme pledged one of the Debentures to Sun to secure the extension of the Sun Loan.

48.     Bonhomme, D. Davis, and Lehman agreed to a modification / extension of the Sun Loan and related loan documents, including the guaranties and pledge agreements, in reliance upon the false statements and omissions of the above-named Defendants.

49.     On or about September 14, 2012, Truman Bank was closed by the Missouri Division of Finance, which appointed FDIC-R as Truman Bank's Receiver.

50.     Upon information and belief, FDIC-R then sold Truman Bank "in its entirety" to Simmons First National Bank.

51.     At the time FDIC-R was appointed as Truman Bank's Receiver, a claims bar date of December 19, 2012 was established for the filing of claims against Truman Bank.

52.     Plaintiff Bonhomme timely filed its claim against Truman Bank, based on the above facts.

53.     On or about January 15, 2013, the FDIC notified Bonhomme of the disallowance of Bonhomme's claim.

COUNT I

(Federal Securities Fraud—15 U.S.C. §§78, <em>et seq.</em>; 17 C.F.R. §240.10b-5)

54.     Plaintiffs hereby reallege and incorporate herein by reference their allegations in paragraphs 1 - 53 above.

55.     The Debentures constitute securities under 15 U.S.C. §78c(a)(10).

56.     In connection with the sale of the Debentures to Bonhomme, Defendants used the means and instrumentalities of interstate commerce.

57.     In connection with the sale of the Debentures to Bonhomme, Defendants made misleading and false statements of fact and omitted to state facts necessary to make the statements made not false and/or misleading, as alleged above.

58.     Defendants, while under a duty to disclose facts, failed to disclose those facts.

59.     Defendants' statements were false in the ways specified above.

60.     Each of the Defendants participated in the making of the misrepresentations or was under a duty to disclose the facts described above.

61.     Defendants' misrepresentations and omissions were material.

62.    Bonhomme reasonably relied on the misrepresentations and on Defendants' duty to disclose facts in purchasing the Debentures.

63.    Each Defendant acted with knowledge of the falsity of the statements or with reckless regard to their truth.

64.    Bonhomme was damaged by its purchase of the Debentures, and Defendants' misrepresentations and omissions proximately caused that damage.

## COUNT II

### (Missouri Securities Fraud)

65.    Plaintiffs hereby reallege and incorporate herein by reference their allegations in paragraphs 1 - 64 above.

66.    The Debentures constitute securities under R.S.Mo. §409.1-102(28).

67.    The Debentures were sold in Missouri.

68.    Defendants sold the Debentures by means of untrue statements of material facts and omissions to state material facts that were necessary to make the statements made, in light of the circumstances under which they were made, not misleading, as set forth above.

69.    Bonhomme did not know the untruths or the omissions.

70.    Defendants knew, or in the exercise of reasonable care could have known, of the untruths and omissions.

71.    Bonhomme was damaged by its purchase of the Debentures, and Defendants' untruths and omissions proximately caused that damage.

72.     Bonhomme is entitled under R.S.Mo. §409.5-509 to recover its damages, plus interest at the rate of eight percent  per year, plus costs and reasonable attorneys' fees.

## COUNT III

### (Breach of Implied Covenant of Good Faith and Fair Dealing)

73.     Plaintiffs hereby reallege and incorporate herein by reference their allegations in paragraphs 1 - 72 above.

74.     By reason of the conduct described above, Defendant Bancorp breached the implied covenant of good faith and fair dealing contained in the Bancorp Note, the Security Agreements, and the Debentures.

75.     Bonhomme has performed each of its obligations under those agreements and each condition precedent to pursuing this action against Bancorp.

76.     Bonhomme has been damaged by Bancorp's breach.

77.     Bonhomme is entitled under the Bancorp Note and the Security Agreements to its costs and attorneys' fees incurred herein as a result of Bancorp's breach.

78.     On or about July 21, 2014 this Court entered judgment in favor of Plaintiffs and against Bancorp.

## COUNT IV

### (Common Law Fraud)

79.     Plaintiffs hereby reallege and incorporate herein by reference their allegations in paragraphs 1 - 78 above.

80.     Defendants made the misrepresentations and failed to disclose the facts set forth above.

81.     Defendants knew these representations were false at the time they made them and knew the facts they failed to disclose.

82.     The facts omitted were necessary to make the representations made by Defendants, in light of the circumstances in which they were made, not misleading.

83.     Defendants' misrepresentations and omissions were material to Plaintiffs' decisions to enter into the transactions described above.

84.     Defendants intended that Plaintiffs would act on these misrepresentations and omissions in the manner reasonably contemplated, by entering into the transactions described above.

85.     Plaintiffs relied on the truth of Defendants' representations and omissions.

86.     Plaintiffs had a right to rely on Defendants' representations and omissions, and Defendants had a duty, by reason of their superior knowledge of material facts, to disclose the facts omitted.

87.     As a direct and proximate result of Plaintiffs' reliance on Defendants' material misrepresentations and omissions, Plaintiffs have been damaged and continue to be damaged in an amount not yet determined.

88.     Defendants Hayes' and Miller's conduct as described herein was intentional, willful, and outrageous because of their evil motive and reckless indifference to the rights of others.  An award of punitive damages in the sum of $6,000,000.00 is warranted by their conduct.

## COUNT V

### (Negligent Misrepresentation)

89.     Plaintiffs hereby reallege and incorporate herein by reference their allegations in paragraphs 1 - 88 above.

90.     Pleading in the alternative, Plaintiffs state that Defendants' misrepresentations, and their failure to disclose material facts, all as set forth above, constitute negligent misrepresentation.

91.     Defendants' supplied information to Plaintiffs, by way of the misrepresentations set forth above, and failed to supply material information to Plaintiffs, by way of the non-disclosures set forth above, in furtherance of Defendants' own pecuniary interest in the transactions described above.

92.     Defendants' misrepresentations and failures to disclose material information were a direct and proximate result of their failure to exercise reasonable care.

93.     Defendants' misrepresentations and failures to disclose material information were committed in connection with the particular business transactions described above.

94.     Plaintiffs reasonably and justifiably relied on Defendants' misrepresentations and failures to disclose material information.

95.     Plaintiffs suffered a pecuniary loss as a direct and proximate result of Defendants' misrepresentations and failures to disclose material information.

96.     Defendants' Hayes and Miller's conduct as described herein was intentional, willful, and outrageous because of their evil motive and reckless indifference to the rights of others. An award of punitive damages in the sum of $6,000,000.00 is warranted by their conduct.

<u>COUNT VI</u>

(Unjust Enrichment)

97.     Plaintiffs hereby reallege and incorporate herein by reference their allegations in paragraphs 1 - 96 above.

98.     By virtue of the transactions described above, Plaintiffs conferred a benefit on Defendants Bancorp and Truman Bank (and its successor in interest FDIC-R).

99.     Defendants appreciated the benefit.

100.    Defendants have retained the benefit under inequitable and unjust circumstances.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court enter judgment as follows:

1.      In favor of Plaintiff Bonhomme, and against each of the Defendants, jointly and severally, for Plaintiff Bonhomme's actual damages suffered in connection with the securities fraud claims set forth in Count I.

2.      In favor of Plaintiff Bonhomme, and against each of the Defendants, jointly and severally, for Plaintiff Bonhomme's actual damages suffered in connection with the securities fraud claims set forth in Count II, plus interest to be calculated at the rate of 8% per annum from the date of injury, plus attorneys' fees.

3.      In favor of each of the Plaintiffs and against each of the Defendants, jointly and severally, for Plaintiffs' damages suffered as a result of Defendants' fraud, as set forth in Count IV, plus punitive damages in the amount of $6,000,000 as to Defendants Hayes and Miller.

4.      In favor of each of the Plaintiffs and against each of the Defendants, jointly and severally, for Plaintiffs' damages suffered as a result of Defendants' negligent misrepresentation, as set forth in Count V, plus punitive damages in the amount of $6,000,000 as to Defendants Hayes and Miller.

5.      In favor of each of the Plaintiffs and against Defendants Bancorp and FDIC-R, as successor in interest to Truman Bank, for such relief as would be fair and equitable arising out of Plaintiffs' claims in Count VI.

6.      In favor of each of the Plaintiffs and against each of the Defendants for Plaintiffs' fees, costs and expenses incurred herein.

16

7.      For such other and further relief as this Court deems just and proper.

Dated: October 17, 2014          Respectfully submitted,

_____/s/ Terry L. Pabst_____
Terry L. Pabst #37187MO
The Law Offices of Terry Pabst, P.C.
225 S. Meramec Ave., Suite 411
St. Louis, MO 63105
(314) 812-8780
(314) 725-0912 (Telefax)
E-Mail: tpabst@webpabstlaw.com

Attorneys for Plaintiffs

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 17, 2014 a true and correct copy of the foregoing pleading was filed electronically to be served via operation of the Court's CM/ECF system on all parties and attorneys of record.

_____/s/  Terry L. Pabst_____