UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BONHOMME INVESTMENT PARTNERS, LLC, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) Case No. 4:13CV475 CDP ) |
| SHAUN HAYES, et al., | ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Plaintiffs are investors who bring claims of securities and other fraud against a failed bank and its officers and directors arising out of a complicated investment transaction in which plaintiffs ultimately lost more than six million dollars. The matter is now before me on motions to dismiss filed by one of the directors and the Federal Deposit Insurance Corporation in its capacity as receiver for the failed bank. I will grant the motions in part.

## Background

Plaintiffs are Bonhomme Investment Partners, LLC, and its two members, Donald Davis and Richard Lehman. Defendant Federal Deposit Insurance Corporation (FDIC) is a federal agency acting as Receiver for Truman Bank, a

failed Missouri bank that went into receivership in September 2012. Defendant Truman Bancorp, Inc. ("Bancorp"), was the parent holding company of Truman Bank. Defendant Wayne was a director at both Truman Bank and Bancorp. Defendant Shaun Hayes, who is one of the two people alleged to have made numerous false representations, was a shareholder of Bancorp and consultant for Truman Bank. Now-deceased Richard Miller, who was Chief Executive Officer and a director of both entities, was the other person alleged to have directly made false statements.

Plaintiffs allege that in early 2009, Miller and Hayes approached plaintiffs and sought a $6 million loan from Bonhomme to Bancorp for Truman Bank's benefit (the "Truman Loan"). Bancorp secured the Truman Loan by pledging to Bonhomme all its Truman Bank stock (the "Truman Stock") and its stock in FFC Financial Corporation (collectively, "the Bancorp Collateral"). On June 19, 2009, Bonhomme made the loan and Bancorp executed a promissory note (the "Bancorp Note") and security agreements. Hayes represented to plaintiffs that Sun Security Bank[1] would lend Bonhomme the $6 million needed to fund the Truman Loan and that Sun would accept the Bancorp Collateral as collateral for the Sun loan.

Unknown to plaintiffs, at the time of the Truman Loan and Sun loan, Bancorp had already pledged the stock comprising the Bancorp Collateral to secure

---

[1] Hayes was also an officer, director, and principal shareholder of Sun Security Bank.

a securities placement in 2003 for over $7 million and a securities placement in 2007 for $5 million. Plaintiffs allege that the defendants knew or should have known at that time that Bancorp could not pledge the Bancorp Collateral and failed to disclose those facts.

In early 2010, Hayes and Miller falsely told plaintiffs that the FDIC and Federal Reserve Bank had informed them that the Truman Stock could not be pledged because Bonhomme could not legally own that stock in event of default by Bancorp. Wayne and the other defendants again failed at this time to disclose to plaintiffs that the reason the Truman Stock could not be pledged was that it had already been encumbered. The plaintiffs obtained permission from Sun, arranged by Hayes, to substitute Bancorp convertible debentures for the Bancorp Note.[2] Truman Bank eventually went into receivership, and the FDIC notified Bonhomme that its claim against Truman Bank was disallowed.

Plaintiffs initially sued Hayes, Miller, Bancorp, the FDIC, and Truman's successor bank, Simmons First National Bank. In the Second Amended Complaint they dropped Simmons, substituted Miller's estate for Miller, and added seven individuals, including Wayne, who were directors of Truman Bank and Bancorp.[3]

---

[2] Davis and Lehman also made personal guarantees or pledged personal assets to Sun as additional security.

[3] Of those added defendants, one has not yet been served (Raymond Saleeby) and four have been dismissed voluntarily (Marvin Cherry, Robert Minkler, Carmelo Natoli, Daniel Slavin).

Plaintiffs' Second Amended Complaint is confusingly pleaded, and a close reading of each count is necessary to determine who is actually being sued. It now appears that four claims are brought against all defendants: Count I, a claim for federal securities fraud under the Securities Exchange Act and Rule 10b-5 implementing that Act; Count II, a claim for securities fraud under Missouri law; Count IV, for common law fraud; and Count V for negligent misrepresentation. Count III is a claim for breach of implied covenant of good faith and fair dealing, but is brought only against Bancorp, although both the FDIC and Wayne moved to dismiss it in case it was brought against them. The final count, Count VI, alleges that Bancorp and Truman Bank were unjustly enriched, and so is apparently brought only against Bancorp and the FDIC. Plaintiffs have already obtained default judgment on all counts against Bancorp.

Defendant Wayne moved to dismiss all counts against him. Wayne argues that he is not liable under Counts III and VI and that he was not intended to be sued under those counts; plaintiffs fail to address these arguments and so they are presumed to have conceded them. Wayne argues that he is not liable under Count II, the Missouri securities fraud claim, because he lacked the requisite relationship with the plaintiffs; the plaintiffs affirmatively concede that Count II should be dismissed as to Wayne. Finally, Wayne contends that Count I must be dismissed

for failure to allege scienter and that Counts IV and V must be dismissed because plaintiffs do not allege that he owed a duty to disclose the omitted information.

The FDIC moved to dismiss Counts II and III on the same grounds as argued by Wayne. It moved to dismiss Count I because plaintiffs failed to allege that Truman Bank sold or had control over the seller of the securities in question. Plaintiffs did not respond at all to the FDIC's motion.

## Discussion

### Legal standards

Defendants Wayne and the FDIC move to dismiss these claims under Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure. To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain factual allegations sufficient "'to raise a right to relief above the speculative level.'" *Parkhurst v. Tabor*, 569 F.3d 861, 865 (8th Cir. 2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007)). Stated another way, "the complaint must allege only enough facts to state a claim to relief that is plausible on its face." *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 569 F.3d 383, 387 (8th Cir. 2009) (internal quotation marks and citation omitted). "The plausibility of a complaint turns on whether the facts alleged allow [the court] to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Lustgraaf v. Behrens*, 619 F.3d 867, 873 (8th Cir. 2010) (internal citation and quotation marks

omitted). The court must still "accept as true the plaintiff's well pleaded allegations," *Parkhurst*, 569 F.3d at 865, and "construe the complaint liberally in the light most favorable to the plaintiff." *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008).

Although Rule 8(a) of the Federal Rules of Civil Procedure ordinarily requires only a "short and plain statement" of the claims, Rule 9(b) and the Private Securities Litigation Reform Act (PSLRA),15 U.S.C. § 78 (u), apply to plaintiffs' securities fraud claims. "Under Rule 9(b)'s heightened pleading standard, allegations of fraud . . . [must] be pleaded with particularity." *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011) (internal citation and quotation marks omitted). "In other words, Rule 9(b) requires plaintiffs to plead the who, what, when, where, and how: the first paragraph of any newspaper story." *Id.* As the Eighth Circuit Court of Appeals has explained, "The PSLRA goes beyond the ordinary pleading requirements described in Rules 8(a)(2) and 9(b) of the Federal Rules of Civil Procedure . . . ." *In re 2007 Novastar Fin. Inc., Sec. Litig.*, 579 F.3d 878, 882 (8th Cir. 2009). "Claims governed by the PSLRA must specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading (the falsity requirement), and state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind (the scienter requirement)." *Lustgraaf*, 619 F.3d at 873 (internal citations and quotation

marks omitted); *see also Detroit Gen. Ret. Sys. v. Medtronic*, 621 F.3d 800, 805 (8th Cir. 2010).

## Count I – Securities Fraud

*Wayne's Motion to Dismiss Count I*

Wayne argues that the plaintiffs' federal securities fraud claims must be dismissed for failure to plead scienter. Plaintiffs contend that given the size of the securities placements and his role as director of Bancorp, Wayne must have known that the Bancorp Collateral had already been pledged.

Section 10(b) of the Securities Exchange Act makes it unlawful "[t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b). "Rule 10b–5 implements [§ 10(b)] by making it unlawful to, among other things, 'make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.'" *Minneapolis Firefighters' Relief Ass'n v. MEMC Elec. Materials, Inc.*, 641 F.3d 1023, 1028 (8th Cir. 2011) (quoting *Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309, 1317 (2011)). The Eighth Circuit Court of Appeals has set forth the six required elements:

> To prevail, a § 10(b)/Rule 10b–5 claimant ordinarily must show (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.

*MEMC Elec. Materials, Inc.*, 641 F.3d at 1028 (citing *Stoneridge Inv. Partners, LLC v. Scientific–Atlanta, Inc.*, 552 U.S. 148, 157 (2008)).

Scienter "can be established in three ways: (1) from facts demonstrating a mental state embracing an intent to deceive, manipulate, or defraud; (2) from conduct which rises to the level of severe recklessness; or (3) from allegations of motive and opportunity." *Detroit Gen. Ret. Sys. v. Medtronic*, 621 F.3d 800, 808 (8th Cir. 2010) (internal citation and quotation marks omitted). Recklessness consists of "unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it." *Fla. State Bd. of Admin. v. Green Tree Fin. Corp.*, 270 F.3d 645, 654 (8th Cir. 2001) (quotation omitted). Recklessness may also be shown where alleged facts demonstrate that the defendants failed to review or check information that they had a duty to monitor . . . ." *Kushner v. Beverly Enters., Inc.*, 317 F.3d at 828 (8th Cir. 2003).

"The inquiry . . . is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007). "It is insufficient to show that a defendant *should have known* that a material statement or omission was false or misleading." *S.E.C. v. Shanahan*, 646 F.3d 536, 544 (8th Cir. 2011) (emphasis in original). Such a showing may present a viable claim for negligence, but not for fraud. *Id.* (citing *In re Ceridian Corp. Secs. Litig.*, 542 F.3d 240, 249 (8th Cir. 2008)).

"[I]n determining whether the pleaded facts give rise to a strong inference of scienter, the court must take into account plausible opposing inferences." *Tellabs*, 551 U.S. at 323. The Supreme Court explained the "comparative" nature of the inquiry:

> To determine whether the plaintiff has alleged facts that give rise to the requisite "strong inference" of scienter, a court must consider plausible nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff. The inference that the defendant acted with scienter need not be irrefutable, *i.e.*, of the "smoking-gun" genre, or even the "most plausible of competing inferences." Recall in this regard that § 21D(b)'s pleading requirements are but one constraint among many the PSLRA installed to screen out frivolous suits, while allowing meritorious actions to move forward. Yet the inference of scienter must be more than merely "reasonable" or "permissible"—it must be cogent and compelling, thus strong in light of other explanations. A complaint will survive, we hold, only if a reasonable person would deem the

> inference of scienter cogent and at least as compelling as any
> opposing inference one could draw from the facts alleged.

*Id.* at 323–24 (internal citations omitted).

Plaintiffs allege that Wayne was a director of both Bancorp and Truman Bank and that Wayne knew or should have known that Bancorp could not pledge the Bancorp Collateral as security, because it already had been pledged to secure other obligations. They also allege that Wayne twice failed to inform them of Bancorp's inability to pledge that collateral: in June 2009, when the loan was made, and again in 2010, when the Bancorp Collateral was exchanged for convertible debentures.

Plaintiffs do not contest Wayne's argument that their complaint contains no allegations of motive or any intent to deceive or defraud by Wayne. Instead, plaintiffs attempt to show scienter by establishing that Wayne's failure to inform them that the Bancorp Collateral had already been pledged was the result of recklessness. Plaintiffs argue that Wayne, as a director of Bancorp, must have known of the 2003 and 2007 securities placements because of their size.

The two security placements totaled over $12 million. The same collateral was later used to secure the plaintiffs' $6 million loan. Plaintiffs have pleaded that at the times they lent the money to Bancorp, Wayne knew that the Bancorp Collateral could not secure the Truman Loan. Construed in the light most favorable to plaintiffs, the complaint raises a strong inference of scienter.

- 10 -

*Cf. Green Tree*, 270 F.3d at 665 (describing the publication of statements despite access to contradictory facts as one of the "classic fact patterns giving rise to a strong inference of scienter"). At this stage of the case, the inference that Wayne knew the collateral was unavailable is at least as compelling as the inference that he was unaware that Bancorp's Truman Bank stock and FFC stock had already been pledged. Whether Wayne actually knew the Bancorp Collateral was unavailable or whether the attendant circumstances surrounding the loans and the collateral were such that its unavailability should have been obvious must be left for a later date. *See id.* at 666 ("The strong-inference pleading standard does not license us to resolve disputed facts at this stage of the case."). Wayne's motion to dismiss Count I will be denied.

*The FDIC's Motion to Dismiss Count I*

The FDIC contends that plaintiffs' Count I for federal securities fraud fails to allege that Truman Bank, the entity over which the FDIC has receivership, sold the debentures. Plaintiffs have not responded to the motion.

A plaintiff alleging securities fraud under Rule 10b-5 must allege that the defendant's fraudulent activity occurred in connection with the purchase and sale of a security. *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1534 (8th Cir. 1996) (citing 17 C.F.R. § 240.10b–5). A defendant may also be liable under Section 10(b) as a "controlling person." *See* 15 U.S.C. § 78(a) ("Every person who,

directly or indirectly, controls any person liable under any provision of this title or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable . . . ."); *Donohoe v. Consol. Operating & Prod. Corp.*, 982 F.2d 1130, 1138 (7th Cir. 1992).

Plaintiffs do not allege that Truman Bank itself sold any securities to Bonhomme. Instead, they allege that Bonhomme received the debentures from Bancorp in exchange for the Bancorp Collateral. *See* 2d Am. Compl. ¶ 44, ECF No. 96. Nor does the complaint allege that Truman Bank had control over Bancorp or any other defendant. Rather, the complaint states that Bancorp was the parent holding company of Truman Bank. 2d Am. Compl. ¶ 7, ECF No. 96. Plaintiffs' Count I for federal securities fraud against the FDIC will be dismissed.

<u>Count II – Missouri Securities Fraud</u>

Plaintiffs' second count is for securities fraud under R.S. Mo. § 409.5-509 based upon the sale of debentures. The Missouri Uniform Securities Act of 2003 provides for a cause of action for purchasers of securities against certain types of defendants: a seller of securities (§ 409.5–509(b)); a securities broker-dealer (§ 409.5–509(d)); and a person that receives directly or indirectly any consideration for providing investment advice (§ 409.5–509(e) and (f)). *Reding v.*

*Goldman Sachs & Co.*, 382 F. Supp. 2d 1112, 1122 (E.D. Mo. 2005). Courts do not *sua sponte* interpret these categories broadly. *See id.*

The plaintiffs' Second Amended Complaint alleges that the "Defendants sold the Debentures . . . ." 2d Am. Compl. ¶ 68, ECF. No. 96. The only other portions of the complaint relating to the acquisition of the debentures involve Hayes, Miller, and Bancorp.[4] The complaint fails to allege any of the predicate relationships existed between plaintiffs and Wayne, Truman Bank, or the FDIC.[5] Count II will be dismissed as to defendants Wayne and the FDIC.

### Wayne's Motion to Dismiss Count IV for Common Law Fraud and Count V for Negligent Misrepresentation

As discussed earlier, when a plaintiff alleges that a defendant committed fraud, Rule 9(b) requires the plaintiff to plead the circumstances of the fraud with particularity. *See Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011). "Conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *Commercial Prop. v. Quality Inns Int'l*, 61 F.3d 639, 644 (8th Cir. 1995).

---

[4] 2d Am. Compl. ¶ 40 ("Hayes and Miller stated that . . . Bonhomme would need to exchange the Bancorp Note for convertible debentures."); ¶ 44 (". . . Bonhomme agreed to exchange the Bancorp Note for two Contingent Convertible Debentures from Bancorp . . . .").

[5] Plaintiffs appear to agree with this assessment, at least as to Wayne. *See* Pl. Resp. Br. 6, ECF No. 158. They did not respond to the FDIC's motion to dismiss.

To state a claim for fraud under Missouri law, plaintiffs must allege that Wayne made a false and material representation knowing it was false and with the intent that plaintiffs act on the representation in a manner reasonably contemplated; that plaintiffs had a right to rely on and did rely on the truth of the representation; and that plaintiffs' reliance proximately caused their injuries. *See Sofka v. Thal*, 662 S.W.2d 502, 506 (Mo. banc 1983). As for a negligent misrepresentation claim, the plaintiff must prove: (1) the speaker supplied information in the course of his business; (2) because of a failure by the speaker to exercise reasonable care, the information was false; (3) the information was intentionally provided by the speaker for the guidance of a limited group of persons in a particular business transaction; (4) the listener justifiably relied on the information; and (5) due to the listener's reliance on the information, the listener suffered a pecuniary loss. *Kesselring v. St. Louis Grp., Inc.*, 74 S.W.3d 809, 813 (Mo. Ct. App. 2002).

In this case, plaintiffs allege that Wayne was a director of Bancorp, was aware of the previous security placements, and nonetheless failed to advise plaintiffs that the Bancorp Collateral was unable to be pledged as security for the Truman Loan. In a fraudulent concealment or nondisclosure case, "a party's silence amounts to a representation where the law imposes a duty to speak." *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 765 (Mo. banc. 2007). "A duty to speak arises where one party has superior knowledge or information that is

not reasonably available to the other." *Id.*; *see also Kesselring*, 74 S.W.3d at 815 (reciting other sources of duty to speak in context of a negligent misrepresentation suit arising from a business transaction). "Silence can be an act of fraud where matters are not what they appear to be and the true state of affairs is not discoverable by ordinary diligence." *Hess*, 220 S.W.3d at 765.

Plaintiffs argue that Wayne's duty to disclose arose solely out of his superior knowledge and their ignorance. Pl. Resp. Br. ¶ 5, ECF No. 158. A thorough reading of the complaint does not reveal any allegation that the undisclosed information was undiscoverable by plaintiffs. Thus, plaintiffs fail to allege facts necessary to support the second duty prong. *See Hess*, 220 S.W.3d at 765. Because plaintiffs fail to allege facts necessary to support Wayne's duty to disclose, both Count IV for common law fraud and Count V for negligent misrepresentation must be dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that the motion to dismiss Counts I , II, and III [# 99] filed by defendant Federal Deposit Insurance Corporation, as Receiver for Truman Bank, is **granted**. Counts IV, V, and VI were not the subject of the motion to dismiss and so remain pending against the FDIC.

**IT IS FURTHER ORDERED** that defendant Wayne's motion to dismiss [# 145] is **granted** as to Counts II, III, IV, and V. The motion is **denied** as to Count I.

*Catherine D. Perry*
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 19th day of May, 2015.