UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION


BONHOMME INVESTMENT PARTNERS, LLC,  )
et al.,                             )
                                    )
                  Plaintiffs,       )
                                    )
      v.                            ) No. 4:13-CV-475-CDP
                                    )
SHAUN HAYES, et al.,                )
                                    )
                  Defendants.       )



MOTION HEARING


BEFORE THE HONORABLE CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE


JULY 17, 2014



APPEARANCES:
For Plaintiffs        Terry L. Pabst, Esq.
                      **THE LAW OFFICES OF TERRY PABST, P.C.**
                      225 S. Meramec Avenue, Suite 411
                      St. Louis, MO  63105


For Defendant         Richard B. Walsh, Jr., Esq.
Richard J. Miller     Sarah Anne Milunski, Esq.
                      **LEWIS RICE LLC**
                      600 Washington Avenue, Suite 2500
                      St. Louis, MO  63101


*REPORTED BY:          Gayle D. Madden, CSR, RDR, CRR*
*                      Official Court Reporter*
*                      United States District Court*
*                      111 South Tenth Street, Third Floor*
*                      St. Louis, MO  63102       (314) 244-7987*
               (Produced by computer-aided mechanical stenography.)

## INDEX

*Witnesses:*

**DONALD MATTHEW DAVIS**
    Direct Examination by Mr. Pabst . . . . . . . . . . Page 10

**ROBERT PAUL GREENE**
    Direct Examination by Mr. Pabst . . . . . . . . . . Page 17

```
 1              (Proceedings began at 1:03 p.m.)

 2              THE COURT:  All right.  We're here in the case of

 3  Bonhomme Investment Partners, LLC, versus Shaun Hayes, et al.,

 4  and this is -- we're here for a hearing on the Plaintiffs'

 5  motion for default judgment against Truman Bancorp, and there

 6  were -- there were some affidavits submitted, but I could not

 7  find support for some of the claims of damages in the

 8  affidavits on this default, so that's why we're having the

 9  hearing.  And so, Mr. Pabst?  Yeah.  Okay.  So you're here on

10  behalf of Bonhomme Investment Partners, Donald Davis, and

11  Richard Lehman?

12              MR. PABST:  And Donald Davis.

13              THE COURT:  Okay.

14              MR. PABST:  So I've got all three of the Defendants.

15              THE COURT:  Okay.  All three of the Plaintiffs?

16              MR. PABST:  Excuse me.  All three of the Plaintiffs.

17  I'm sorry.

18              THE COURT:  Yeah.  Okay.  And then are there -- there

19  are counsel here representing the Defendants or some of the

20  other Defendants?

21              MR. WALSH:  Your Honor, I'm Rick Walsh.  With me is

22  Sarah Milunski.  We represent the Defendant, the Estate of

23  Richard Miller.

24              THE COURT:  Okay.  And then are there any others who

25  are here on behalf of the other Defendants?  It's not actually
```

7/17/2014 Motion Hearing

4

1  necessary.  This is -- there's nobody here on behalf of Truman

2  Bancorp, or is there?

3       MR. PABST:  They are not, and they're in default.

4       THE COURT:  Yeah, I knew they were, but just to --

5  okay.  All right.  So, Mr. Pabst, as I said and I tried to say

6  in the Order, I thought the affidavits you provided did

7  provide support for the $6,000,000 principal that you're

8  seeking, but the facts, of course, are admitted of the

9  complaint.  So the fact you're entitled to the judgment is not

10  an issue.  It's just that I couldn't get these numbers from

11  what you gave me.

12       MR. PABST:  Understood, Judge, and we're here with

13  further evidence to support the damages against Truman

14  Bancorp.

15       THE COURT:  Okay.  Mr. Walsh, was there something

16  else from you that you wanted?  Did you want to be heard on

17  this?

18       MR. WALSH:  Well, no, Your Honor.  Obviously, since

19  it is a default -- it's against one Defendant.

20       THE COURT:  Why don't you come on up to the mike so I

21  can hear you.  Yeah.

22       MR. WALSH:  Okay.  So --

23       THE COURT:  Yeah, it's a default.  It's against one

24  Defendant.  I don't know if your client is affected by it.  So

25  go ahead.

1          MR. WALSH:  Well, it's not, Your Honor, because

2    it's -- it's not something that would be binding on them.  So

3    in terms of the -- in terms of what is literally going on here

4    today, we don't have an issue with.  The reason I'm here is to

5    point out the timing aspect of this because holding of a

6    default is one thing; entering a default judgment in a

7    particular amount is different, and with respect to the timing

8    of that, I'd like to point out that under what we think is

9    settled Eighth Circuit law, that the better practice is to not

10   enter the actual default judgment until the end of the

11   proceedings so that you avoid inconsistent judgments, and I

12   would cite the Court to *Pfanenstiel Architects versus Chouteau*

13   *Petroleum*, which is at *978 F.2d 430*.  That's from 1992, and

14   the idea behind it, Your Honor, is -- and I'll just quote it

15   directly.  "When there are multiple defendants who may be

16   jointly and severally liable for damages alleged by plaintiff

17   and some but less than all defendants default, the better

18   practice is for the district court to stay its determination

19   of damages against the defaulters until plaintiff's claim

20   against the nondefaulters is resolved.  This is not because

21   the nondefaulters would be bound by the damage determination

22   against the defenders -- the defaulters, but to avoid the

23   problems of dealing with inconsistent damage determinations

24   against jointly and severally liable defendants."  And they

25   cite the *In re Uranium Antitrust Litigation*.

1          I would also cite to the Court the case of *Frow*

2    *versus De La Vega*, which is an *82 U.S. 522* case at 552.

3    That's an 1872 Supreme Court case that is cited for it.

4          There is a -- and the practice, obviously, is to

5    avoid the idea when there is joint and several liability --

6    and I would note that under the -- I'm not sure which of the

7    defaults are being presented, but under four of the six counts

8    that are before the Court -- I believe Counts I, II, IV, and

9    V, which are against all of the Defendants -- and then in the

10   addendum clause, the prayer for relief is against all

11   Defendants jointly and severally, and that's why I wanted to

12   present that and bring that to the Court's attention.

13         THE COURT:  Mr. Pabst, what's your position on that?

14         MR. PABST:  Judge, I wish I had known about this

15   objection earlier than today.

16         THE COURT:  Yeah, like within seven days after when

17   you filed the motion, right?

18         MR. PABST:  We filed the motion back in November.

19         THE COURT:  Right.

20         MR. PABST:  You know, the affidavits were considered

21   by you without objection in November.  You entered your Order

22   a couple of weeks ago, and here we are hearing about this

23   issue for the first time today.  I haven't briefed it.  I

24   didn't know we were going to be addressing the issue, so if

25   you're inclined to -- you know, to brief the issue, I'd like

1   for an opportunity to brief it.  I didn't know it was going to

2   be an issue until five minutes ago.

3          THE COURT:  Right.  And I -- so, Mr. Walsh, how come

4   you didn't file an objection to the motion for default

5   judgment if you in fact object to my entering it at this time?

6          MR. WALSH:  Well, it's not the -- it's not the

7   default.  You can enter a default, I believe.

8          THE COURT:  And the Clerk entered the default months

9   and months ago --

10          MR. WALSH:  Yeah.

11          THE COURT:  -- but the motion for default judgment

12   was filed in November.

13          MR. WALSH:  Right.  Right.  And it's the timing of

14   the amount, Your Honor, and it doesn't say that it's

15   impermissible to do so.  It doesn't say that you're not

16   permitted to do it.  It says the better practice is to do it.

17   It's not something I can say, look, you know, it's against the

18   law to do this.  It's that it's a better practice to avoid

19   inconsistent judgment amounts.

20          THE COURT:  And so what are you asking me to do here

21   today?

22          MR. WALSH:  Well, I think it's fine to take the

23   evidence of what they believe their attorneys' fees are,

24   et cetera.  I think the better practice would be to wait to

25   enter an amount of an actual default judgment until there's a

1  determination against the nondefaulters because, in other

2  words, if you have the idea of -- you know, think of this.

3  You'd have a -- you'd have a -- like a -- let's say the six --

4  a $6,000,000 claim, and the Plaintiffs are claiming that all

5  Defendants are jointly and severally liable for it, and yet a

6  determination on the merits -- what if they find out that the

7  claim is much less than that?  All it does is create that idea

8  of an inconsistent judgment, Your Honor, that courts want to

9  avoid.

10          THE COURT:  Yeah.  I don't think there's any -- any

11  problem with doing it.  I mean I -- we don't do it so much in

12  civil cases, but it's frequent in criminal cases that I'll

13  have a whole bunch of defendants on a case and there will be a

14  whole bunch of restitution awards, and I find, you know,

15  these -- I find one defendant liable for the whole ball of

16  wax, and I find other defendants liable for, you know, a

17  portion of it, and so I think that what you would have -- if I

18  enter this judgment here today against Truman Bancorp, it

19  would -- it would be binding on them.  If later there were

20  judgments entered against other Defendants in different

21  amounts -- presumably lesser amounts, but I guess it could

22  also be higher amounts -- those would -- those could still be

23  jointly and severally liable with the Truman Bancorp, but it

24  would be only up to the -- whatever extent.  Truman Bancorp

25  will still be liable for the whole amount.  The other

1    Defendants might be liable for more or less, but, you know,

2    the damage award is only one amount.  So I think I can go

3    ahead and do it.  I do understand your point, and sometimes in

4    these complicated cases we do that, but if -- if Mr. Pabst

5    wants his default judgment, I think, you know, he's entitled

6    to get it at this point, and it's only -- it's not binding on

7    the other Defendants.  It's only on Truman Bancorp, and the --

8    you know, whatever findings I make as to the amounts will have

9    no effect on any other Defendant.  When he gets -- when we get

10   to trial or down the line, he still has the burden of proving

11   100 percent of his claim against all the other Defendants.

12   This doesn't relieve him of anything.  So I don't think the

13   risk of inconsistent verdicts is significant enough for me to

14   withhold entry of default judgment if he can show that he's

15   entitled to it, and he's shown entitlement, just not the

16   amount.  But I do also think that the -- you know, if there

17   are inconsistent judgments -- they're not necessarily

18   inconsistent.  I mean if there are different judgments, that

19   doesn't mean they're necessarily inconsistent.  I understand

20   that in theory they are, but as a practical matter, I don't

21   think it would cause any problems.  So I'm going to overrule

22   your objection to the extent that's what it is.

23            MR. WALSH:  Thanks for the clarification, Judge.

24            THE COURT:  Okay.  Yeah.  Thanks.  And I think it

25   should be very clear on the record that this isn't binding on

1   anybody.  Nobody's going to have to argue about that on

2   anybody else.  Right?

3          MR. WALSH:  Thank you.

4          THE COURT:  Okay.

5          MR. PABST:  Judge, we're ready to proceed.

6          THE COURT:  Okay.

7          MR. PABST:  Call our first witness, Donald Davis.

8          THE COURT:  All right.  Sir, would you step right

9   over here to the clerk to be sworn.  Mr. Davis, if you'll just

10  step right up here.

11         MR. PABST:  Judge, since we don't have a jury, I've

12  actually got paper exhibits, if I may approach.

13         THE COURT:  You may.

14                    **DONALD MATTHEW DAVIS**,

15  HAVING BEEN FIRST DULY SWORN, WAS EXAMINED AND TESTIFIED AS

16  FOLLOWS:

17                      DIRECT EXAMINATION

18  BY MR. PABST:

19  Q    State your name for the record, please.

20  A    Donald Matthew Davis.

21  Q    And, Mr. Davis, are you a Plaintiff in the lawsuit we're

22  here on today?

23  A    Yes, I am.

24  Q    Okay.  Now, we're here on Plaintiffs' damages, but just

25  to give damages some context, can you just briefly describe

1   for the Judge how this transaction that closed in 2009 came

2   about?

3   A    Yes.  Back in 2009, my -- Shaun Hayes, who was a

4   consultant for Truman Bancorp, and Richard Miller, which was

5   the Chairman of the Board for Truman Bancorp, approached

6   myself and Rick Lehman, my partner, and they wanted us to lend

7   the bank $6,000,000.  So we met with Shaun Hayes, who then

8   said he'd get a loan for us at Sun Security Bank, which he was

9   at that time an officer there, and we took a loan out at Sun

10  Security.  We had to put up a Pershing account with about $2.5

11  million as collateral for the loan, and we also had to give

12  them the note that we received from Truman Bancorp for

13  collateral.

14  Q    Okay.  And the transaction you described -- if you would

15  open the exhibit binder to Exhibit 1, is Exhibit 1 an -- a

16  supplemental affidavit from you that we're submitting here

17  today on the default judgment against Truman Bancorp?

18  A    Yes, it is.

19  Q    And is the signature on the last page that's been

20  notarized -- is that your signature?

21  A    Yes, it is.

22  Q    Okay.  And if I understand your testimony correctly,

23  there was a loan from Sun Security to the Plaintiff Bonhomme

24  Investment; is that correct, sir?

25  A    That's correct.

1   Q    Okay.  And then there was a second loan from Bonhomme

2   Investment to Truman Bancorp; is that correct, sir?

3   A    That's correct.

4   Q    Okay.  And is that second note, the $6,000,000 note from

5   Bancorp to Bonhomme -- is that included as Exhibit 1 to the

6   complaint filed in this case?

7   A    Yes, it is.

8   Q    Okay.  Now, in terms of the Sun loan to Bonhomme

9   Investment, did you individually have to guaranty that loan?

10  A    Yes, I did.

11  Q    Did anybody else have to guaranty that loan?

12  A    Richard Lehman.

13  Q    Okay.  And in addition to those personal guaranties, did

14  Mr. Lehman have to pledge any securities to secure the Sun to

15  Bonhomme loan?

16  A    He used a Pershing capital account with about $2.5

17  million in the account.

18  Q    Okay.  And at the time of the original two loans, Sun to

19  BIP -- Bonhomme -- and then Bonhomme to Truman, was any

20  collateral supposed to be changing hands to secure those

21  loans?

22  A    Truman Bancorp gave us their bank stock, and they gave us

23  another FFC stock that was a holding company --

24  Q    Okay.

25  A    -- of that bank.  As collateral.

1   Q    Okay.  If I understand, so Truman Bank pledged Truman

2   stock and that FFC stock to Bonhomme; is that correct, sir?

3   A    That's correct.

4   Q    Okay.  And at some point in time, did you become aware

5   that the stock that was pledged wasn't authorized to be

6   pledged?

7   A    Yes.  We found out in early 2012 that that stock was

8   pledged for a trust preferred loan at U.S. Bank.

9   Q    Okay.  Now, at the time you did the original deal back in

10  2009, did you know that the Truman stock and the FFC stock

11  wasn't available to be pledged as collateral?

12  A    No idea.

13  Q    Okay.  If you had known back in 2009 that the Truman

14  stock and the FFC stock was not available to be pledged, would

15  you have entered into the Sun loan to Bonhomme?

16  A    No, I would not.

17  Q    If you had known at that time that the stock wasn't

18  available to be pledged, would you have entered into the

19  Bonhomme to Truman Bancorp loan?

20  A    No.

21  Q    At some point in time, did Sun Security Bank fail?

22  A    Yes.  It failed in late 2011.

23  Q    Okay.  And at some point in time, did Truman Bank fail?

24  A    Yes.  They failed in 2012.

25  Q    Okay.  Now, on the -- the -- the Sun Security loan to --

Donald Matthew Davis Direct Examination          7/17/2014

14

1   to Bonhomme, do you have an understanding as to what bank

2   bought that loan after Sun Security Bank failed?

3   A    Great Southern Bank purchased that note from the FDIC.

4   Q    Okay.  And did Great Southern Bank then sue you and

5   Mr. Davis on your personal guaranties?

6   A    Mr. Lehman?

7   Q    Excuse me.  I'm sorry.  Mr. Lehman on your personal

8   guaranties?

9   A    Yes, they did.

10  Q    Okay.

11  A    And took the $2.5 million security account too.

12  Q    Okay.  That was the next question.

13  A    Oh, sorry.

14  Q    In addition to suing you on your guaranties, did Great

15  Southern Bank, as the successor to Sun Security Bank, also

16  collapse that Pershing securities account?

17  A    Yes, they did.

18  Q    At any point in time, has Truman Bancorp made any

19  payments to Bonhomme on the -- on that loan?

20  A    Not that I recall.

21  Q    And we'll cover that aspect of damages with a different

22  witness.  Now I want to look at your damages, Mr. Davis.  I

23  believe you testified that Great Southern Bank had sued you

24  and Mr. Lehman on your guaranties; is that correct?

25  A    That's correct.

Donald Matthew Davis Direct Examination                    7/17/2014

15

1    Q    And in that case, has the Court in St. Louis County

2    entered an Order and Judgment against you and Mr. Davis on

3    that Sun --

4              THE COURT:  This is Mr. Davis, right?

5              MR. PABST:  Excuse me.  Mr. Lehman.

6    A    Yes, they did.

7    Q    (By Mr. Pabst) Okay.  And if you would, refer to

8    Exhibit A to your Exhibit 1, the affidavit.

9              THE COURT:  Yes.  Exhibit A to Exhibit 1?

10             MR. PABST:  Correct.  Exhibit 1 is the affidavit.

11   Exhibit A to Exhibit 1.

12             THE WITNESS:  Okay.  Got it.

13   Q    (By Mr. Pabst) And is that a copy of the Order entered by

14   the St. Louis County Court in the *Great Southern Bank versus*

15   *Davis and Lehman* matter?

16   A    Yes, it is.

17   Q    And in that Order, is there judgment entered against you

18   individually in the amount of $3,927,199.55?

19   A    Yes, there is.

20   Q    And in the defense of that case, have I submitted legal

21   invoices representing the services I've done defending you and

22   Mr. Lehman in that *Great Southern Bank* case?

23   A    Yes, you have.

24   Q    Okay.  And if you would, look at Exhibit B to your

25   affidavit, which is Exhibit 1.  Are those redacted copies of

Donald Matthew Davis Direct Examination                    7/17/2014

16

1   the invoices that I have submitted on the *Great Southern Bank*

2   *versus Davis and Lehman* case through March of 2014?

3   A    Yes, they are.

4   Q    Okay.  And the record will reflect those invoices total

5   about $12,080.  Is it your -- do you owe 50 percent of those

6   legal fees?

7   A    Yes, I do.

8   Q    Okay.  And so for your damages here this afternoon, are

9   you requesting damages in the amount of the Great Southern

10  Bank judgment against you personally in the amount

11  $3,927,199.55?

12  A    Yes, I am.

13  Q    And are you also alleging damages in the amount of $6,040

14  representing your legal fees payable to me for defending the

15  *Great Southern Bank versus Davis and Lehman* matter?

16  A    Yes, I am.

17          MR. PABST:  Nothing else for this witness, Judge.

18          THE COURT:  All right.  You may step down then.

19  Thank you, sir.

20          You may call your next witness.

21          MR. PABST:  Second witness is Mr. Robert Greene.

22          THE COURT:  All right.  Sir, if you'll step right up

23  here to the clerk.

24      (Witness sworn.)

25          THE COURT:  It's G-R-E-E-N-E, right?

1    THE WITNESS:  Correct.

2    THE COURT:  Okay.

3                  **ROBERT PAUL GREENE**,

4  HAVING BEEN FIRST DULY SWORN, WAS EXAMINED AND TESTIFIED AS

5  FOLLOWS:

6                  DIRECT EXAMINATION

7  BY MR. PABST:

8  Q    Good afternoon, Mr. Greene.  Could you state your name

9  for the record?

10  A    Sure.  It's Robert Paul Greene.

11  Q    And, Mr. Greene, what is your role with the Plaintiff

12  Bonhomme Investment Partners, LLC?

13  A    I am the manager of the LLC.

14  Q    And, Mr. Greene, do you have an accounting degree?

15  A    I do.

16  Q    Is it fair to say you do the accounting work for Bonhomme

17  Investment Partners at this time?

18  A    I do oversee the accounting for the entity, yes.

19  Q    Okay.  Now we're looking at the damages relating to

20  the -- the first note, Judge, which is the Truman Bank to

21  Bonhomme note.  Have you seen a copy of that note before, sir?

22  A    Yes, I have.

23  Q    And if you would, turn to the exhibit binder, Exhibit 2,

24  which is your affidavit.  And is Exhibit A to your affidavit a

25  copy of the promissory note from Truman Bancorp to Bonhomme,

1  June the 19th, 2009, in the original principal amount of

2  $6,000,000?

3  A    Yes, it is.

4  Q    Based on your review of the records, have there ever been

5  any payments from Truman Bancorp to Bonhomme on this

6  promissory note?

7  A    None that I've seen, no.

8  Q    And have you had the occasion to calculate the interest

9  due under the note, which is Exhibit A to your affidavit?

10 A    Yes, I did.

11 Q    Okay.  And if you would, look at Exhibit B to your

12 affidavit.

13 A    Okay.

14 Q    What is Exhibit B, sir?

15 A    Exhibit B is a printout of a calculation I did to

16 calculate the interest due on that note.

17 Q    Okay.  And that's interest due through the date of the

18 hearing today; is that correct, sir?

19 A    That's correct.

20 Q    And what is the principal amount due on that note as of

21 today?

22 A    Principal amount due is $6,000,000.

23 Q    And what is the -- what was the interest rate called for

24 under the promissory note?

25 A    The rate on the note was seven percent.

1   Q    Did you calculate the interest payable on that note using

2   a seven percent rate?

3   A    Yes, I did.

4   Q    And what is the interest accrued and payable on that note

5   as of today, July the 17th, 2014?

6   A    Total accrued interest on that note is $2,133,370.

7   Q    Okay.  And presuming the note isn't paid today, is there

8   a per diem interest going forward that will continue to

9   accumulate until this note is paid?

10  A    Correct.  The per diem, using the seven percent rate, is

11  $1,150.68.

12  Q    Per day?

13  A    Per day.

14  Q    Thank you.  And in this case, Mr. Greene, before I got

15  involved, are you aware that Sher, Corwin and Winters, LLC,

16  was representing the Plaintiff when the case was filed?

17  A    I am.

18  Q    Okay.  And has Sher, Corwin and Winters submitted legal

19  fees to Bonhomme with respect to Sher Corwin's work on this

20  case?

21  A    They did.

22  Q    And if you will, refer to Exhibit C to your affidavit.

23  Is Exhibit C a group exhibit of redacted legal invoices from

24  Sher Corwin to Bonhomme?

25  A    Yes, it is.

1   Q    Reflecting Sher Corwin's work on this case?

2   A    Yes.

3   Q    And then the record is going to reflect that Sher Corwin

4   withdrew and I entered my appearance in September.  Have I

5   also submitted invoices to Bonhomme relating to my work on

6   this case, *Bonhomme versus Hayes, Miller, FDIC*?

7   A    Yes, you have.

8   Q    And is Exhibit D to your affidavit a group exhibit of the

9   redacted copies of my legal invoices to Bonhomme through

10  March the 31st, 2014?

11  A    Yes, that's correct.

12  Q    Then to summarize, Mr. Greene, is Bonhomme asking for

13  damages today in the principal amount due under the note of

14  $6,000,000?

15  A    That's correct.

16  Q    And is Bonhomme also asking for default damages against

17  Truman Bancorp for accrued interest through today in the

18  amount of $2,133,370?

19  A    That's correct.

20  Q    And is Bonhomme also requesting legal fees in the

21  aggregate between Sher Corwin and my firm in the amount of

22  $47,398?

23  A    That is correct.

24  Q    And in your affidavit, you add up those numbers, and so

25  is the total damages that Bonhomme is seeking here today in

1  default damages against Truman Bancorp $8,180,768?

2  A    That is correct.

3          MR. PABST:  No further questions for Mr. Greene.

4          THE COURT:  All right.  Thank you, sir.  You may step

5  down.

6          THE WITNESS:  Thank you.

7          MR. PABST:  Judge, in addition, the other Defendant

8  who -- excuse me -- the other Plaintiff who is not here today

9  is Dr. Richard Lehman.  He's an orthopedic surgeon.  He wasn't

10 able to join us here today.  We do have in the exhibit binder

11 Exhibit 3, which is Mr. Lehman's supplemental affidavit

12 supporting his claim for damages, and there's three components

13 there, Judge.

14         THE COURT:  Okay.

15         MR. PABST:  The first component is the judgment

16 entered in St. Louis County against Davis and Lehman

17 individually in the amount of $3,927,199.55.  In addition, it

18 was Mr. Lehman's Pershing brokerage account which was

19 liquidated by Great Southern.  His affidavit reflects that

20 amount, $2,248,439.  And the third component of Mr. Lehman's

21 damages is his 50 percent of my legal fees incurred in the

22 *Great Southern versus Davis and Lehman* matter, and his 50

23 percent is $6,040.  So those three components total up to

24 $6,181,678, and that is the amount of damages Mr. Lehman, as

25 Plaintiff, claims against Truman Bancorp.

1          And at this time, Judge, we would move for the

2     admission of Exhibit 1, which is the Davis affidavit and its

3     exhibits; 2, which is the Greene affidavit and its exhibits;

4     and Exhibit 3, which is the Rick Lehman affidavit and its

5     exhibits, into evidence.

6          THE COURT:  All right.  I will receive Exhibits 1, 2,

7     and 3 into evidence.  And so in terms of a judgment, you're

8     looking for -- yeah.  Okay.  So the -- the judgment for the

9     two individuals is -- is just the amount of the Great Southern

10    judgment?

11         MR. PABST:  That is correct.

12         THE COURT:  Not the principal amount because they

13    haven't had to pay that whole six million?

14         MR. PABST:  That -- that's correct.

15         THE COURT:  Okay.  Although when you add everything

16    else --

17         MR. PABST:  Just what happens there is they -- rough

18    numbers.  They were suing for six million, but they collapsed

19    Mr. Lehman's account, and so then their number came down from

20    six million to less than six million because they got cash out

21    of Lehman's security account, and then it went to judgment in

22    St. Louis County on the balance, and that's the 3.9 that came

23    down from Judge Bresnahan a couple of weeks ago.

24         THE COURT:  Okay.  Well, you know, I think this is

25    all fine now and does cure the problem I had when I read

1    the -- you know, looked at the written motion.  Part of the

2    delay here, of course, was changing counsel and figuring out

3    what was going on, but, you know, so I -- I -- I do under --

4    you know, I think this fully supports it.

5            But now I have to ask you if maybe you want me to do

6    what Mr. Walsh was just asking and not enter this judgment,

7    maybe make findings but not enter it, and let me tell you why.

8    Once the $6,000,000 -- and, of course, this is also not

9    binding on the other Defendants or doesn't benefit them.

10           MR. PABST:  Understood.

11           THE COURT:  But once I enter judgment on this amount

12   against Truman Bancorp, whatever the total ends up, Mr. Greene

13   just testified there's per diem interest continuing at the

14   rate of $1,150.68 per day.

15           MR. PABST:  Correct.

16           THE COURT:  And that may be true against lots of

17   other people in this case, but once I enter a judgment against

18   Truman Bancorp, it's not going to be true against Truman

19   Bancorp because now what you have is a judgment and not a

20   promissory note, and under the judgment, you're going to draw

21   postjudgment interest at the federal rate, which is like

22   negative something right now.  I mean it's not quite, but it's

23   .000 who knows what.  It's very small.  It's the statutory

24   rate that's set, you know, by law.

25           MR. PABST:  I understand.

24

```
 1            THE COURT:  And that's the postjudgment interest

 2    rate.  So that's what -- I mean this won't affect any other

 3    case, you know, you might have, but as to this Defendant -- or

 4    at least I don't believe it will affect any other of your

 5    judgments.

 6            MR. PABST:  No.  I understand your point, Judge, but

 7    our position -- we would still like to have you --

 8            THE COURT:  You still want the judgment.  Okay.

 9            MR. PABST:  -- enter the judgment.  I understand the

10    delta in interest and we're going to be agreeing to a lesser

11    rate, but Truman Bancorp --

12            THE COURT:  Yeah.

13            MR. PABST:  -- is in default, and the odds --

14            THE COURT:  Right.

15            MR. PABST:  -- of us ever recovering anything are --

16            THE COURT:  Yeah, the likelihood of their paying you

17    anyway is slim, but it's just that as to them I just wanted to

18    make clear that, you know, what you get is instead the much

19    lower federal --

20            MR. PABST:  No.  We understand that, Judge.

21            THE COURT:  -- postjudgment interest rate.

22            MR. PABST:  There's a number of other cases going on,

23    so there are other --

24            THE COURT:  Yeah.

25            MR. PABST:  -- reasons for us coming in and asking
```

1   for the judgment.

2           THE COURT:  Right.

3           MR. PABST:  This is one of a dozen or so cases

4   involving the Shaun Hayes failed banks.

5           THE COURT:  So I believe the evidence you've provided

6   does support the judgment you are seeking.  I would appreciate

7   it if you would provide a proposed form of default judgment, a

8   proposed order setting out the amounts.  I will not

9   necessarily sign what you provide, but I'd like to make sure

10  that what I'm doing is what you think you want.

11          MR. PABST:  Certainly.

12          THE COURT:  I'll probably redo it myself, but I'd

13  like to see what -- I might sign it if it actually, you know,

14  supports what I think these numbers support, which I think --

15  I think you do have -- you've shown entitlement to judgment on

16  behalf of each of the three Plaintiffs.  It's three different

17  amounts.

18          MR. PABST:  Correct.

19          THE COURT:  But it's a joint and -- I mean it's a --

20  it's all against Truman Bancorp.

21          MR. PABST:  Correct.

22          THE COURT:  And then it is true that if other

23  Defendants were later found liable for these same amounts,

24  Truman Bancorp would -- would be entitled, if it ever decided

25  it had any legal standing, to say, wait a minute, that should

1    have been joint and several with the others, I think, although

2    it's in default.  I don't know if it is, but, you know, if you

3    really thought you could ever collect this against Truman

4    Bancorp, the other Defendants -- let me see if I can get this

5    right.  No.  I'm wrong.  It doesn't benefit both ways.  It

6    just benefits the other Defendants if they come in because

7    they're going to say whatever it is, it's joint and several

8    with Truman Bancorp, what you've already entered.

9            Right, Mr. Walsh?  That's what you're going to say?

10           MR. WALSH:  It is, Your Honor.  That's right.

11           THE COURT:  Yeah.

12           MR. WALSH:  And it's -- yeah, it's more complicated

13   than that.

14           THE COURT:  I'm sure it is.  Yeah.  But so -- okay.

15   I got that.

16           MR. PABST:  We understand the risks and the rewards,

17   Judge.

18           THE COURT:  Yeah.  Right.

19           MR. PABST:  And our position is we'd like to have you

20   enter the order.

21           THE COURT:  So what I would like you to do is file

22   electronically in the CM/ECF form a proposed form of judgment

23   as to this Defendant only, and if you can do that, I can enter

24   a judgment.  I could do it tomorrow if you can do that today.

25           MR. PABST:  And, Judge, would you also like it

27

1   emailed to you in Word format, so you can --

2           THE COURT:  Yeah.  That'd be great.

3           MR. PABST:  Okay.  So I'll file it, efile, and then

4   I'll send the email to Brian or whoever you want to --

5           THE COURT:  Yeah.

6           MR. PABST:  -- to give you a Word document if you

7   want to use ours as a -- as a model or starting point.

8           THE COURT:  Right.  If you'll send that to my

9   assistant, Brian Crow --

10          MR. PABST:  Right.

11          THE COURT:  -- that would be helpful, and that way if

12  I want to take your form and just modify it a little, I can

13  without having to redo it all.

14          MR. PABST:  It will save a little time.  It will save

15  somebody a little time.

16          THE COURT:  Yeah, yeah.  And we don't normally ask

17  you to give us proposed orders on everything, but I think it

18  would be helpful on this because I do want to make sure I'm --

19  that I am really sure I'm doing it right --

20          MR. PABST:  Great.

21          THE COURT:  -- to what you want, and I'll

22  double-check it to make sure it's what I think is supported by

23  the evidence.

24          MR. PABST:  Great.  Thank you, Judge.

25          THE COURT:  Okay.  All right.  Then I will go ahead

28

1   and enter the default judgment once you've shown entitlement

2   to these, the numbers as you've had the evidence presented

3   here today.  It's what I was lacking in the written motion and

4   which is fine, and we'll go ahead and do it now.  I won't

5   withhold entry as requested by the one other Defendant, but

6   obviously, it's a default judgment against one Defendant.

7   It's not binding on the others.

8              MR. PABST:  Understood, Judge.

9              THE COURT:  Okay.  Anything else?

10             MR. PABST:  Not today.  Not from the Plaintiffs.

11             THE COURT:  Mr. Walsh, anything else?

12             MR. WALSH:  Nothing further, Your Honor.  Thank you.

13             THE COURT:  Okay.  Then that's what we'll do, and I

14   appreciate, Mr. Pabst, your sending the proposed form in.

15             MR. PABST:  Great.  Thank you for your time, Judge.

16             THE COURT:  Okay.  And thank you, all.  Court's in

17   recess, and I'll keep these exhibits.

18             MR. PABST:  Great.

19         (Proceedings concluded at 1:37 p.m.)

20

21

22

23

24

25

CERTIFICATE


         I, Gayle D. Madden, Registered Diplomate Reporter and

Certified Realtime Reporter, hereby certify that I am a duly

appointed Official Court Reporter of the United States

District Court for the Eastern District of Missouri.

         I further certify that the foregoing is a true and

accurate transcript of the proceedings held in the

above-entitled case and that said transcript is a true and

correct transcription of my stenographic notes.

         I further certify that this transcript contains pages

1 through 28 inclusive.

         Dated at St. Louis, Missouri, this 25th day of June,

2015.


                     _____

                              /s/ Gayle D. Madden

                     GAYLE D. MADDEN, CSR, RDR, CRR

                        Official Court Reporter